## SLEEPER *v.* SANDOWN.

Ordinary care is such care as is usually exercised under like circumstances by persons of average prudence.

Whether it is want of ordinary care for a blind man to travel upon the highway on foot, unattended, is a question of fact to be determined by the jury in view of the circumstances of each individual case.

Where a blind man, in the daytime, walked off the side of an unobstructed bridge sixteen feet in width, which was defective for want of a rail, and suffered an injury which would not have happened but for his blindness, the court cannot say, as matter of law, that his fault contributed to the accident; but it is for the jury, after considering his familiarity with the road, his ability arising from the increased acuteness, fidelity, and power of his other senses, or otherwise, and all the circumstances of the case, to say whether he was guilty of carelessness in attempting to pass the bridge without a guide.

CASE, by David T. Sleeper against the town of Sandown, for injuries to the person of the plaintiff, caused by a defect in a highway which the defendants were bound to keep in repair. The defect alleged and proved was the want of a railing on one side of a bridge across the Exeter river, the bridge being a little rising twenty-six feet in length, from fourteen to sixteen feet wide, with some plank in the middle projecting on each side considerably for the convenience of bracing the railing; and the height of the bridge was eight or nine feet.

The testimony of the plaintiff himself tended to prove that he was totally blind, and had been for several years; and that since he became so he had been accustomed to walk across this bridge, often alone; sometimes ten times in one week, in going from his place, which was one mile and a half from this bridge, to and from his work. He testified that when he crossed it he always felt his way with his cane very carefully, and sometimes ran against the railing; that on August 4, 1870, he was crossing it on foot, in the daytime, feeling his way along

as he always did, and the first he knew he stepped off and fell, strik-
ing his feet into the edge of the water, having got two thirds or three
fourths of the way across.    He said he did not stub his toe, but just
walked right off.    He testified that he could not tell when he was last
across this bridge before this August 4.   Did cross it in the winter be-
fore, with a grist on his back, to Clark's mill.    He said there was
always a railing when he had his sight.    The railing on one side was
proved to be off at the time of the accident, but when it came off it
did not distinctly appear.    A witness for the defendants testified that,
on the last of June or first of July, 1870, one end of the railing was
down.    A witness for the plaintiff testified that it was off on May 23,
1870.    Amos Clark, who lived near the bridge, testified that he saw
the plaintiff soon after this accident, and went with him across the
bridge towards his home, looked off the bridge at the place where the
plaintiff said he fell, and saw that the ground below had been disturbed
and marked, although he saw no man's track, and said there was no
railing on the bridge there, which was the east side, but could not tell
when the railing went off.    Clark said, at the place where he saw the
marks quite a number of the bridge planks projected out beyond the
rest.

The plaintiff's evidence tended to prove that after he became blind
he was accustomed to do many kinds of farm work, such as chopping
wood, felling trees, mowing, reaping, threshing grain, digging potatoes,
planting and hoeing, although with difficulty the first time hoeing
corn, and that at these various kinds of work he was a good man to
hire, and was accustomed to travel the roads on foot and alone a good
deal.    The plaintiff was the only witness to the accident, and it ap-
peared that the bridge was not obstructed by any person or thing upon
it, and that nothing contributed to cause the accident but the absence
of the rail combined with the total blindness of the plaintiff.    The
defendants' evidence tended to show the bridge to be sixteen feet wide.

The court instructed the jury that although this was in the daytime,
and the plaintiff would have seen the defect and avoided it if he had
been possessed of his eyesight, it would not follow, as matter of law,
that he must be regarded as not in the exercise of ordinary care and
prudence because he attempted to pass alone when he was totally
blind, but that it was a question of fact for the jury whether he was in
the exercise of ordinary care and prudence in passing under such cir-
cumstances ; that the burthen of proving such care was on the plain-
tiff ; that, if he was totally blind, more care would naturally be ex-
pected when travelling alone, though the standard, after all, would be
ordinary care.

The court also instructed the jury that, in respect to roads which a
town is bound to keep in repair, it is required to keep them in a rea-
sonably safe condition for the traveller, in view of the extent and
character of its use, and that the traveller has a right to assume that
the road is in such condition, and use it accordingly,—although, if he
has notice of the defect, he would have no right to act as if such

defect did not exist, and carelessly expose himself to injury. But, if he has no notice of any defect, he may take it that none exists; but even then he would be bound to use ordinary care to guard against unexpected defects,—that is, the care that persons of ordinary prudence and care are accustomed to use in such cases. The jury were also told that, if the want of ordinary care and prudence of the plaintiff contributed to the injury, he could not recover. By way of illustration, the court told the jury that if a defect in a carriage contributed to an injury to a traveller, which happened by a want of repairs of a highway, the town would not be excused because of such defect in the carriage if it was not known to the traveller, and he was in no fault' for not knowing it; and, also, that whether the plaintiff was in fault, or not using due care, 'the jury would determine it as they would whether a horse used by a passenger, and whose fright contributed to an injury, was or was not a reasonably safe horse to use. If he was, and the fright was purely accidental, for which the traveller was not in fault, and the injury was caused by the bad condition of the road, the town would be liable. To these instructions the defendants excepted.

The defendants requested the court to charge the jury that a bridge twenty-six and a half feet long, sixteen feet wide, and eight feet high, with no obstruction thereon, having a rail on one side only, is suitable for a single person, exercising due care, to pass across, on foot, in the daytime. The court declined to charge the jury in those terms, but did instruct them that such a bridge as was described would seem, under ordinary circumstances, with nothing on the bridge to impede such foot passenger having possession of his eyesight, to be safe enough; but still, it was for them to say whether it was reasonably safe for the travel upon it, and if not, whether plaintiff, without fault on his part, was injured by reason of such defect. They were also told that it was not enough that a road or bridge be reasonably safe for travellers at favorable times and under favorable circumstances, but they must be reasonably safe in case of accident happening without fault of the traveller.

The defendants also prayed the following instructions, which the court declined to give, except so far as they are embraced in the instructions above set forth:

1. The burthen is upon the plaintiff to prove that he exercised ordinary care and prudence to prevent the injury complained of; and if the injury would not have happened had the plaintiff exercised the care and prudence which ordinary men having the sense of sight exercise under similar circumstances, then the verdict should be for the defendants.

2. That one totally blind is required to exercise a higher degree of care and diligence to avoid injuries, while travelling alone on the public highways, than persons having the sense of sight.

3. That it is negligence for one totally blind to travel unattended on the public highways, a mile and a half from home, where and in the manner the plaintiff did.

4. That want of due care is negligence; and due care is the highest care which men of ordinary prudence would exercise in the same situation.

5. That there is no competent evidence to prove that the plaintiff exercised ordinary care to avoid the accident which he says caused the injury of which he complains.

The questions of law arising on this case were reserved for the whole court.

*Marston*, for the defendants.

The defendants maintain,—

1. That towns are only required to keep highways reasonably safe for persons having such use of the senses common to all men as will enable them to observe and avoid manifest defects in the daytime. One having the sense of sight, and failing to use it, and thereby receiving an injury, would be held wanting in ordinary care; and he is equally wanting in ordinary care who, without sight, precipitates himself upon an obstruction which the sense of sight would have enabled him to avoid. *Farnum* v. *Concord*, 2 N. H. 392; *Palmer* v. *Andover*, 2 Cush. 600; *Butterfield* v. *Forrester*, 11 East 60; *Holly* v. *Boston Gas Light Company*, 8 Gray 123; *Butterfield* v. *W. R. R.*, 10 Allen 532; *Smith* v. *Smith*, 2 Pick. 621; *Howard* v. *North Bridgewater*, 16 Pick. 189.

2. That totally blind men are required to exercise a higher degree of diligence to avoid injuries than those having the sense of sight: that is, the sense of sight wanting, other senses must be employed with more care than is required of those possessed of all the senses, otherwise the care and diligence of ordinary men would not be exercised. *Tucker* v. *Henniker*, 41 N. H. 317; *Butterfield* v. *W. R. R.*, 10 Allen 532.

3. That there is in this case a total want of evidence of due care. The facts are not in dispute. The bridge was sixteen feet wide, unobstructed, wanting a rail on one side, and the plaintiff walked off in the daytime. He exercised no sense, and, of course, no care, to prevent the accident. Due care, the facts not disputed, is a question of law. *Butterfield* v. *W. R. R.*, *supra*; *Fox* v. *Sackett*, 10 Allen 535; *Wright* v. *M. & M. R. R.*, 4 Allen 283; *Callahan* v. *Bean*, 9 Allen 401; *Lane* v. *Crombie*, 12 Pick. 177.

4. Ordinary care is the highest care that men of ordinary prudence would exercise in the same situation, and that is defined to be such care as men of ordinary capacity would exercise. How can one be said to exercise ordinary care, who, wanting the sense of sight, conducts himself as those who have it? *Shrewsbury* v. *Smith*, 12 Cush. 177.

5. The case put by the court by way of illustration was calculated to mislead the jury. It was, in fact, telling the jury that the plaintiff was in no fault in not knowing a rail was wanting because he could not see, and so no care was required on his part.

*Hatch* and *Stickney*, for the plaintiff.

I. The first proposition of the defendants would preclude the plaintiff from his action, because he was blind, and might have avoided injury if he had been able to see. But this is not the true rule, and the charge of the Chief Justice upon this point was sufficiently favorable to the defendants. Persons who have encountered in the darkness of night defects in a highway, with which they were familiar and which they might have easily avoided in the daytime, have often been holden entitled to recover. Shearman & Redfield on Negligence, sec. 414, and note; *Whittaker* v. *West Boylston*, 97 Mass. 273; *Woodman* v. *Nottingham*, 49 N. H. 387, 388; *Witherley* v. *Regent's Canal Co.*, 12 C. B. (N. S.) 2.

Indeed, it has been repeatedly holden that persons blind, or of defective vision, may still be entitled to recover for injuries received by defective highways. Shearman & Redfield on Negligence, sec. 413; *Davenport* v. *Ruckman*, 37 N. Y. 568; S. C. 10 Bos. 20.

II. We deny that a blind man is required to exercise any higher degree of diligence to avoid injuries than persons who can see. It may be true that blind men, travelling upon the highways, are bound to use their remaining senses more carefully than seeing men would need to do. This only requires of them ordinary care—such care as men ordinarily use for their own safety. It would be absurd to require of all persons one ordinary degree or standard of care, to be exercised in the same manner and by the same senses. Highways are intended for the use of all persons,—women and children, persons of weak minds or defective senses, persons preoccupied by business, affliction, curiosity, and the like : all these have the same necessity as others to use the highways, and roads must be made reasonably safe for their accommodation, they using, on the whole, ordinary care. We think they are bound to use only such care as they are capable of. A different rule would substantially exclude these classes of persons from passing. Shearman & Redfield on Negligence, secs. 48, 49; *Lovett* v. *Salem & So. Danvers R. R.*, 9 Allen 557–559; *Robinson* v. *Cone*, 22 Vt. 313; *Oakland R. Co.* v. *Fielding*, 48 Pa. St. 320; *Gardner* v. *Grace*, 1 Fost. & Fin. 359. But it is not necessary here to settle that question, for the charge to the jury was, that the plaintiff must appear to have used ordinary care. *Tucker* v. *Henniker*, 41 N. H. 318. It may be imprudent or negligent for some persons, in consequence of natural defects, to go upon the highway at all, or to go unattended. So it would be negligent for a person to drive upon the highway with an insufficient carriage or an unruly horse— *Clark* v. *Barrington*, 41 N. H. 44 ;—and this is precisely the illustration used by the court. Whether the plaintiff was properly upon the highway was left to the jury.

III. The questions, whether the plaintiff was a fit man to travel alone in the highway, and whether he in fact used proper care, were for the jury,—there being a dispute about the facts and evidence on both sides to be weighed. *Palmer* v. *Portsmouth*, 43 N. H. 265; *Carle-*

*ton* v. *Bath*, 22 N. H. 563; *Wheelock* v. *Boston & Albany R. R.*, 105 Mass. 203; *Stapley* v. *London, B., & S. C. R.*, L. R. 1 Exchq. 21; *Ernst* v. *Hudson River R. R.*, 35 N. Y. 9; *Catawissa R. Co.* v. *Armstrong*, 52 Pa. St. 282; *Walker* v. *Goodman*, 21 Ala. (N. S.) 647; Shearman & Redfield on Negligence, secs. 11, 219, and cases there cited. The capacity of the plaintiff, as well as the care he used, was much debated at the trial. He was shown to be able to chop wood, fell trees, mow, reap, thresh grain, plant, hoe corn, dig potatoes, &c., so well, that he was " a good man to hire ;" and it appeared that he was accustomed to travel the roads on foot; that he recognized the approach of travellers, &c. It was even contended by the defendants that he was not blind. Upon this point the case might be much more full ; and the plaintiff will move to amend, if necessary, by adding an abstract of the evidence, including the facts above stated. And the care he did use was likewise a matter of controversy. It appeared that he had often crossed the bridge alone before the accident, and when he crossed it he always felt his way along with his cane very carefully, and sometimes ran against the railing ; and at the time of the accident he was crossing it in the daytime, " feeling his way along as he always did," and the first he knew he fell off.

How much care this indicates, and whether he used all that could be reasonably required of him under all the circumstances, is necessarily a question for the jury. There was always a railing on the bridge before he lost his sight, and whenever he had crossed it before the accident; and he had a right to assume that there was a railing then, at the time of the accident; and if there had been, he would have passed over safely, as he had always done before. It would seem that he exercised all the care that he was capable of, or that could be reasonably required of him. It would be unreasonable to require him to take some one with him every time he had occasion to travel upon the highways, or to inquire and ascertain whether any dangerous places had been made in the highways or bridges since he last travelled over them ; he had a right to presume that the town had done its duty in that respect, and had kept the highways and bridges in a reasonably safe condition for him and all others who had occasion to travel upon them. It cannot be imputed to him as negligence, or want of ordinary care, that he failed to take some one with him, or to make such inquiries on such occasions. Whether it was or not, it was properly left to the jury to decide from all the circumstances. The plaintiff was cross-examined upon this point at great length ; and there was conflicting testimony as to the structure of the bridge, the place where he fell off, the impression made upon the earth by his fall, the mud upon his person, &c. Upon this point we will move to make the testimony more full if necessary. " The blind," says HUNT, C. J., in *Davenport* v. *Rushman*, " have means of protection" and " sources of knowledge of which all are not aware." It is impossible to aver that the total amount of care used by the plaintiff in travelling along the highway, aided by his quickened sense of feeling and hearing, was

not equal to the care that men in general ordinarily use,—for persons who see do not always perceive; their attention may be diverted and their sight may be turned from the danger they are approaching, and yet they may be guilty of no negligence which will prevent their re-covering for injuries like that which the plaintiff suffers. The plaintiff certainly used more care than ordinary men could use in the night, and it is immaterial whether the accident happened for want of light or want of sight. It is wholly the fault of the town in either case.

LADD, J. The main question is, whether the court should have told the jury, as matter of law, that the negligence of the plaintiff so con-tributed to his injury that the town are not legally liable. This was the position of the defendants, as is shown by their third request for instructions; and most if not all the other exceptions will be found, on examination, to rest upon the same view of the law. For exam-ple: the court was requested to charge the jury that a bridge twenty-six and a half feet long, sixteen feet wide, and eight feet high, with no obstruction thereon, having a rail on one side only, is *suitable* for a single person, exercising due care, to pass across on foot, in the day-time. Of course, nobody would think of denying so plain a proposi-tion of fact; and the learned counsel for the defendants could hardly have felt the need of aid from the court to secure a finding in his favor on the question whether such a bridge was suitable for such a purpose. This, clearly, was not the object of the request. Nor could it have been supposed that a bridge, suitable for a single person exercising due care to pass across on foot in the daytime, was all the town were bound to show. A narrow foot-bridge might answer that requirement. The principles upon which the sufficiency of a given highway is to be determined are well settled, and were, of course, perfectly understood by counsel at the trial. It was not, therefore, to show that the town were in no fault with respect to the condition of the bridge that the instruction was desired: the test proposed was entirely too narrow, and if such were the object of the request it would be quite too absurd for comment. What, then, was the object? Obviously, the same as that of the third request, and growing out of the same claim as to the law. It amounts to this: that the defendant, by walking off such a bridge at such a time, was guilty of contributory negligence, and so not entitled to recover. And when the court gave the request, but added an explanation which prevented the jury from allowing it the effect for which the defendants were contending, its whole value to them was destroyed as completely as though it had been refused.

It is hardly necessary to show, with respect to the other exceptions, that they have the same foundation, and must stand or fall according as that foundation proves to be sound or otherwise.

As to whether the bridge was legally sufficient,—that is, whether the town were in fault by reason of the absence of a railing on one side, there being no exception,—it is to be assumed that correct instructions were given, and the verdict establishes the fact of their negligence in

this respect. The only question, therefore, to which the exceptions have relation, is that of due care on the part of the plaintiff.

On this point the rule given to the jury was, that the plaintiff was bound to show that he was in the exercise of ordinary care and prudence in passing the bridge under the circumstances shown. With this general proposition we do not understand the defendants to find fault. It is the usual rule. But the contention is, that inasmuch as the accident would not have happened but for the blindness of the plaintiff, inasmuch as it would clearly be want of ordinary care for persons in general possessing the sense of vision to walk off such a bridge in the daytime, it follows that the plaintiff could not have been in the exercise of ordinary care when he did so, and that the jury ought to have been so told, as matter of law.

If the jury, in passing upon the question of the plaintiff's contributory negligence, were to be precisely confined to his conduct in the single act of crossing the bridge,—that is, if in order to show that he was in the exercise of ordinary care he must show that he took the same heed to his last step, which precipitated him from the bridge, as he did to all that preceded it tending to the same result, as persons in general with eyesight would have taken under the same circumstances,—the argument would seem to be wellnigh conclusive ; and whether the question of negligence, in that view, were to be considered one of law or of fact, could make but little difference. The result would be likely to be the same in either view,—although we should not, perhaps, be warranted in saying that a blind man might not make such vigilant use of his remaining senses as to put himself in possession of all the facts relating to the defect which a man with vision would ordinarily acquire.

But we think this view cannot be sustained. Blindness of itself is not negligence. Nor can passing upon the highway, with the sight of external things cut off by physical incapacity of vision in the traveller, be negligence, in and of itself, any more than passing upon the highway when the same things are wholly obscured by the darkness of night. In either case, it seems plain to us that there are other elements which must be taken into the account.

Although blindness in itself is not negligence, still, in judging of the conduct of a blind man, his unfortunate disability must be considered, and he must doubtless be held to govern his conduct with a reasonable regard to his situation in that respect. Many acts, which would show no want of care on the part of one possessed of vision, would be evidence of the grossest carelessness when attempted by one without it. For example : if a blind man should knowingly place himself upon the brink of a precipice, and then undertake to move about with no one to guide his steps or warn him of danger, and in doing so should meet with a fall and be injured, no one would doubt but that his fall was the consequence of his own carelessness and folly. But, on the other hand, suppose he were walking on his own grounds, along a pathway with every step of which he was perfectly familiar from long

and constant use, and in doing this should fall into a pit that had ᴜ ᴧ wrongfully dug there only over night, without his knowledge, and under such circumstances that he was in no fault for not knowing its existence, with what show of reason could it be contended that the accident was chargeable to his want of care?

Now if, in the present case, the plaintiff knew or ought to have known that it was dangerous for him to attempt to cross this bridge alone, as he did, his attempt to do so would, beyond all question, be want of due care, and he could not recover for the injury that ensued. But he had a right to assume that the bridge was reasonably safe and free from defect,—that is, that the legal duty of the town with respect to its condition had been performed,—and to act upon that assumption. If, considering its location, the kind and amount of travel usually passing over it, &c., a rail on each side was necessary to its legal sufficiency, this plaintiff, although blind, had the same right to assume the existence of a rail on each side that any traveller passing either in the daytime or in the night-time would have; and if an accident happened to him by reason of the want of a rail, his own fault not contributing, no reason can be conceived why he is not as much entitled to recover as though, having the sense of vision, he had attempted to cross by night and the same mishap had befallen him. He could only assume that the town had done what they were legally bound to do; but the legal insufficiency and defect of the bridge being ascertained, we think the question of his negligence depends, not upon the exact mode in which the defect caused the injury, or whether it might have been avoided by·the use of eyesight, but upon the character and complexion of his act in making the attempt to pass. Was his physical and mental condition such that he might fairly suppose he could safely travel on foot over this highway and over this bridge without a guide, or was it such as to make his attempt to do so an imprudence? Taking into consideration his total blindness, and at the same time his familiarity with the road, his ability to do various kinds of work, to go about unattended and take care of himself, the increased activity, fidelity, and power of his other senses consequent upon his blindness, if the fact were so,—could he undertake to cross this bridge (assuming it to be in the condition in which the town were bound to keep it), at the time and in the way·he did, with a reasonable assurance of safety? That, we think, was the question; and that question being answered in the affirmative, we are unable to see how he can be charged with want of ordinary care, even though the accident would not have happened but for his want of sight. He only attempted what, under all the circumstances, he might reasonably suppose was safe, and what would have been safe but for a defect existing through the defendants' fault. Where is his want of due care that contributes to the result? Suppose defective vision, instead of total blindness, contributes to an accident,—or defect in any of the other senses, or the loss of an arm or a leg, or sickness, or the infirmity of age, or the weakness of childhood,—would not the question in such cases most clearly

be, whether, considering the condition of the person injured, it was
want of due, that is, ordinary care, in him to be travelling on the high-
way at all ?     What difference in principle can be pointed out between
the cases supposed and the present ?     We are unable to discover any.
Blindness is no more negligence than near-sightedness, and probably
no more likely, on the whole, to contribute to an accident ; and wheth-
er any one of the senses be wholly obliterated, or only obscured and
partially destroyed, cannot, as we see, make any difference with the
application of the rule.

Assuming, then, that the plaintiff in this case might, with a reason-
able assurance of safety, undertake to cross this bridge, so that he was
in no fault for being there, and that the accident was the combined
result of his blindness and the want of a rail which the town ought
to have supplied, it follows that his fault did not contribute, and he is
entitled to recover.  An examination of the case shows that the trial
proceeded and the cause was submitted to the jury in accordance with
these views.

All the evidence tending to show the extraordinary ability of the
plaintiff after he became blind, in executing various kinds of work,
&c., was clearly admitted upon the question whether it was a reasona-
bly prudent act for him to attempt to pass the bridge ; and the court
expressly charged the jury that the question was, whether he was in
the exercise of ordinary care and prudence in passing, under the cir-
cumstances.

This disposes of all the questions in the case except the fourth
request for instructions, which was as follows: " That want of due
care is negligence, and due care is the highest care which men of ordi-
nary prudence would exercise in the same situation."  This, we think,
would be putting a strain upon the definition which it will not fairly
bear, and which would be likely to prejudice the plaintiff.  Ordinary
care may be well enough defined as such care as is usually exercised
under like circumstances by persons of average prudence—such care
as people in general are accustomed to exercise.  Our conclusion is,
that the exceptions must be overruled, and there must be

*Judgment on the verdict.*